UNITED STATES v. McDONALD.[1]

(Circuit Court of Appeals, Ninth Circuit.   February 24, 1896.)

No. 225.

CLAIMS AGAINST THE UNITED STATES—DISTRICT ATTORNEY'S CLERK—COMPENSATION.

A lawyer appointed by a district attorney, ostensibly as a clerk, but to assist him in the duties of his office, pursuant to a letter from the attorney

---
[1] Petition for rehearing denied.

general authorizing such appointment on condition that the appointee should look solely to the district attorney for his compensation, which was to be paid out of the emoluments of the office, is not an employé of the United States, and cannot maintain a suit against them for his compensation. Gilbert, Circuit Judge, dissenting. 66 Fed. 255, reversed.

In Error to the Circuit Court of the United States for the District of Montana.

The defendant in error filed his petition in the circuit court to recover from the plaintiffs in error upon two specific claims for clerical services rendered by him, as a clerk in the office of the United States attorney for the district of Montana, during the years 1891 and 1892. The claim for services in 1892 was disallowed by the court below (66 Fed. 255), and the only question before this court relates to his claim for services for the year 1891, amounting to $1,237.50. The petition alleges "that, pursuant to authority from the attorney general of the United States therefor, plaintiff began said services on or about the 12th day of March, 1891, under an appointment by the said United States district attorney, at an annual salary of $1,500, and continued said services under said appointment, and at the request of said attorney general and the said United States district attorney, up to and including the 31st day of December, 1891." The answer admits "that, by authority of the attorney general of the United States, plaintiff performed certain clerical services in the office of the United States district attorney for said district, commencing on or about the 12th day of March, 1891, at an annual salary of $1,500, and continuing said services up to the 1st day of December, 1891." The findings of the circuit court below were: "First. That from the 12th of March, 1891, to the 31st day of December, 1891, plaintiff performed services for the United States as clerk in the office of the United States district attorney for the district of Montana; that he was employed to perform said services for the United States by E. D. Weed, the United States district attorney for the district of Montana, and his salary was fixed at $1,500 per annum; that said Weed was duly authorized to so employ plaintiff at said salary." As a conclusion of law the court found "that plaintiff is entitled to a judgment against the United States for the sum of $1,237.50."

It is contended by the plaintiffs in error that the court erred in finding as a fact that "the plaintiff performed services for the United States," and erred in its conclusion of law. The facts relative to the appointment of the defendant in error, as shown by the bill of exceptions, are as follows: On January 26, 1891, E. D. Weed, then United States attorney for Montana, addressed a communication to the attorney general, stating that the business of the United States was increasing so fast as to place it beyond his power to give it proper attention, adding, "I have to request that you appoint Mr. John M. McDonald as my assistant, and that the compensation be allowed from the emoluments of my office in excess of the maximum." The attorney general answered this communication as follows: "On the 26th ultimo you ask for the appointment of an assistant attorney, at a compensation to be allowed from the emoluments of your office in excess of your maximum. Whenever an appointment is made in the manner mentioned, it is a difficult matter to get a settlement through the accounting officers of the treasury. The better way seems to be that you appoint a person for the discharge of clerical services in your office, at a compensation not exceeding $1,500, such person to be an attorney at law who can assist you in the courts. If you are willing to appoint Mr. McDonald, his appointment as an assistant is authorized, upon the further condition that he is to understand that he can have no account against the United States for services, but is to look exclusively to you for compensation." Pursuant to the authority thus given, the United States attorney for the district of Montana appointed McDonald as a clerk in his office, and in due time presented his account against the United States, in which he included, "Amount paid John M. McDonald for services as assistant attorney, $1,237.50." This item in the emolument account of the United States attorney was suspended. The reason given by the comptroller to the district attorney was as follows: "In your communication you state that, in reference to the vouchers of John M. McDonald for $1,237.50, 'if they were made out to him as assistant United States attorney, it was an error on his part, as he is not, officially speaking, such officer, and

draws no salary as such from the United States. He is a clerk in my office, appointed by me, under directions of the attorney general, at a salary of $125 per month, to be paid out of the emoluments of this office.' " The comptroller further informed the United States attorney that, before the suspended item could be allowed, "you will be required to furnish a sworn statement setting forth the fact that Mr. McDonald performed clerical services only, and did not act in the capacity or perform services as assistant attorney."

Preston H. Leslie, U. S. Atty.

Russel J. Wilson, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after stating the facts, delivered the opinion of the court.

The facts of this case present the question whether there is such a privity between McDonald and the government as to authorize him to maintain an action against the United States for the services rendered by him as a clerk in the office of the United States attorney for the district of Montana. The United States never employed McDonald to perform any services, legal or clerical, in their behalf. It is true that the attorney general gave authority to the United States attorney for the district of Montana to appoint McDonald as a clerk in his office, to assist him in the discharge of his duties as district attorney, at a named salary; but this authority was given upon the express condition that McDonald "is to understand that he can have no account against the United States for services, but is to look exclusively to the district attorney for his compensation." This authority is conclusive. Its true interpretation and meaning govern the question. McDonald was to be paid by the district attorney out of the fees and emoluments of his office. The district attorney was to be allowed for McDonald's services out of his emolument account, as an expense properly incurred in his office. McDonald had no trust relation with that fund. He could only look to the district attorney for his compensation. The settlement of the emolument account was a matter between the government and the district attorney. If any item in that account was erroneously disallowed, the district attorney could maintain an action therefor against the United States. A clerk in the office of a district attorney is not a government officer. The fact that, in the emolument accounts of the district attorney, the auditor may allow him to deduct from his fees the clerk's compensation, does not make the clerk such an officer or employé of the government as to authorize him to recover any compensation for legal or clerical services rendered in the office of the United States attorney. The claim of McDonald is analogous to that of deputy marshals or deputy clerks, and it has always been held that such officers are in no sense creditors of the United States for the amount of their compensation. Deputy marshals, although entitled to certain fees by statute, and recognized as officers of the court, are not officers of the United States, in the sense that they can maintain an action against the government for their fees. Bollin v. Blythe, 46 Fed. 181; Powell v. U. S., 60 Fed. 687; Wallace v. Douglass, 103 N. C. 19, 9 S. E. 453. In Powell v. U. S., Bruce, J., said:

"With the limitation that he [the deputy marshal] is not to receive more than three-fourths of the fees received or payable for the services rendered by him, he may have any contract with the marshal for his compensation which they may see fit to make. But the fees go to the marshal, whether earned by him in person or by deputy. The accounts of the deputy for services rendered go into the account of the marshal as vouchers for the money paid out by him in the execution of process, and are so presented and allowed by the court, and audited by the accounting officers of the treasury department at Washington. A system has grown up, under the statutes, for the keeping, rendering, and auditing of accounts of marshals and of other officers of the courts; and the act of March 3, 1887, did not change this system. The act did not create new causes of action, but only made the government suable upon existing causes of action, and was not intended to change the system of keeping the accounts of this class of public officers. * * * The most that can be said is that the deputy has an interest in the fees of the marshal, and the limitation of three-fourths to the deputy (one-fourth going to the marshal, doubtless in consideration of his responsibility) may be reduced by the attorney general; showing that, in contemplation of the law, there can be no severance or division of interest in the fees between the marshal and his deputies, for which each can severally make claim, but the fees (the fees and emoluments of the office) go to the marshal, and he is provided with an allowance from which he pays his deputies for their services. It seems clear, from a consideration of the statutes on the subject, and the manner in which the accounts of the marshal are made up and settled by the accounting officers of the treasury department, that the deputy marshals are not employed by the government, and have no contract, either express or implied, with the United States, in virtue of which they can maintain suit in the execution of process."

In U. S. v. Meiggs, 95 U. S. 748, the court had under consideration the question whether a deputy clerk was entitled to the 20 per cent. additional compensation granted by the joint resolution of congress approved February 28, 1867 (14 Stat. 569), and after drawing the distinction existing between the position of deputy clerks and the employés of the government in the Twenty Per Cent. Cases, 13 Wall. 568, and holding that the deputy clerk was not entitled to the extra compensation provided for in the joint resolution, among other things, said:

"The circumstance that in the emolument account of the clerk the auditor allows him to deduct from the fees, which he would otherwise pay into the treasury, the deputy's compensation, does not make him an employé of the department."

The judgment of the circuit court is reversed, with directions to the circuit court to dismiss McDonald's petition.

GILBERT, Circuit Judge (dissenting). In my judgment the decision of this case turns not so much upon the question whether or not the petitioner was an employé of the government as it does upon the question whether or not he had a contract, express or implied, with the United States, out of which arises a claim which may be the basis of the present action. The doctrine of U. S. v. Meiggs, 95 U. S. 748, and other similar cases, is not decisive of this question. The court in that case construed an act of congress which gave additional compensation to certain employés of the government. One of the questions presented was whether a deputy clerk of the supreme court of the District of Columbia was one of the beneficiaries of the act. The court held that he was not, for the reason that he belonged to the judiciary department

of the government, whereas the act made provision only for the employés of the executive branch. After so holding, the court proceeded to say, obiter:

"The deputy served at a salary fixed by a contract between him and the clerk. He was also paid by the clerk, and worked for the clerk, and performed services which it was the duty of the clerk to perform, and for which the clerk received compensation and fees paid by the litigants for whom those services were rendered. It is very difficult to see how this deputy clerk can be called an employé of the government at all. The government was never liable to him for any salary at any time, and, if the principal clerk had failed to pay him the $2,000, the government clearly would not have been liable for it."

More directly in point is the decision in Manning's Case, 13 Wall. 578. The question there presented was whether certain guards, who were appointed to assist the warden of the jails of the District of Columbia, were employés of the government. The appointment of these guards was not authorized by any statute, nor was their compensation prescribed by any appropriation. They were selected and appointed by the warden under the authority of the head of the department of the interior. It was held that they were employés of the government, for the reason that although the charge for their services was required to be approved by the warden, and included by him in his report, the report was nevertheless subject to revision by the secretary of the interior, who had the power to fix the amount of the guards' compensation. I am unable to distinguish that case from the case at bar. But I hold that it is not necessary that the petitioner in this case be deemed to have been an "employé" of the government, in the technical sense in which that term is used in the decisions, in order that he may prosecute the present action. It is sufficient if he have a claim arising "upon any contract, express or implied, with the government of the United States," as contemplated in the act to provide for the bringing of suits against the government of the United States (1 Supp. Rev. St. U. S. p. 559). The petitioner, it is true, was employed by the district attorney to assist him in his official duties, but he was employed under direct authority from the judiciary department of the government. His compensation was fixed, not by the district attorney, but by the department, and he was to be paid out of moneys belonging not to the district attorney, but the moneys of the United States. He had an implied contract with the United States. His services were rendered exclusively for the United States. In this respect his attitude differs from that of the deputy clerk in the case of U. S. v. Meiggs, a large portion of whose services were rendered on behalf of private litigants, and were public services only in the sense that courts are established and maintained for the public welfare. In the ordinary course of the business of the department, the petitioner's salary was payable by the district attorney, who was the disbursing officer of the government for that purpose. As the case stands upon the record, the petitioner has not been paid. There was money in the hands of the district attorney, arising out of the fees and emoluments of his office, sufficient to pay the amount for

which judgment was rendered for the petitioner in the court below. The district attorney has not been permitted to make the payment. The money remains in the treasury of the United States. The term of office of the district attorney has expired. This item of his account has been disallowed. What recourse, under the circumstances, has the petitioner? He clearly could not bring an action against the district attorney, for the latter was never personally responsible for the salary, nor has he received from the United States the money with which to make the payment; nor could the petitioner compel him to bring the action in his behalf. The stipulation in the attorney general's letter that the petitioner was to have no account against the United States, but was to look exclusively to the district attorney for his compensation, must be interpreted in the light of the whole correspondence upon the subject. When so regarded, it is evident that the petitioner was to look for his compensation solely to the fund arising from the fees and emoluments of the district attorney's office, and that, aside from his demand upon that fund, he could have no recourse against the United States. The petitioner has complied with this requirement, but the fund out of which he was to be paid is wrongfully withheld. He is entitled to receive his compensation. He is the real party in interest, and he is without a remedy, unless a remedy be afforded him in this action. In my judgment the jurisdiction conferred under the act of congress above referred to was, and was intended to be, sufficiently broad and liberal to include claims of the nature of that which is here presented, and the judgment of the circuit court should be affirmed.